O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT TEUTSCHER,<br><br>    Plaintiff,<br><br>v.<br><br>RIVERSIDE SHERIFFS' ASSOCIATION,<br><br>    Defendant. | NO. ED CV-06-1208-RHW-OP<br><br>**FINDING OF FACTS AND CONCLUSIONS OF LAW** |

A jury trial was held that began on April 8, 2013 and concluded on April 16, 2013, in Riverside, California. The jury was asked to determine whether Defendant wrongfully terminated Plaintiff. It found for Plaintiff on his claims of wrongful termination in violation of public policy, violation of Labor Code § 1102.5, and violation of Labor Code § 98.6; and awarded $457,250 in compensatory damages and $357,500 in punitive damages.

At the same time, Plaintiff presented an ERISA retaliation claim before the Court. The following are the Court's Finding of Facts and Conclusions of Law with respect to Plaintiff's ERISA claim.

### PLAINTIFF'S ERISA CLAIM

Section 510 of ERISA contains an anti-retaliation provision that protects employees who report potential ERISA violations:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan … or for the purpose of interfering with the attainment of any right to which such participant may become entitled

**FINDING OF FACTS AND CONCLUSIONS OF LAW ~ 1**

> under the plan. . . It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter.

29 U.S.C. § 1140.

Section 502 authorizes civil actions brought to enforce a plaintiff's right as set forth in other sections of the Act.[1] Thus, to establish a claim of retaliation under section 501, Plaintiff must show: (1) he was engaged in activity protected under ERISA; (2) he suffered an adverse employment action; and (3) a casual link exists between the employees protected activity and the employer's adverse action. *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989). To show causation, Plaintiff must show that his protected activity was the motivating force behind his discharge. *Id.*

### 1.     Findings of Fact

The evidence presented at trial establishes the following:

Plaintiff Scott Teutscher was an employee of Defendant Riverside Sheriffs' Association (RSA) from September, 1999 until September 13, 2005, when he was terminated by James Cunningham, Executive Director of RSA. Prior to working for RSA, he had fifteen years of law enforcement background working with the Riverside County Sheriff's Offices. He began working for RSA as a Field Representative. As a field representative, Plaintiff handled grievances between the deputies and their employer, the County of Riverside, and helped the deputies with Worker's Compensation matters.

In November, 2002, Plaintiff was promoted to the position of Legal Operations Manager for the RSA Legal Defense Trust (RSA-LDT). His annual

---

[1] Section 502 provides: A civil action may be brought–(3) by a participant, beneficiary, of fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan. 29 U.S.C. § 1132.

**FINDING OF FACTS AND CONCLUSIONS OF LAW ~ 2**

salary at the time he was terminated was approximately $92,000.00 in wages and benefits, not including Christmas bonuses, IRA contributions, or use of the company car.

 RSA-LDT is an ERISA Trust. It is a pre-paid legal plan that collects premiums from plan participants, and in return, provides them with a benefit. Specifically, the RSA-LDT provides plan participants with a lawyer, field representative, and/or other legal representation services when the plan participant needs such service. The RSA-LDT is governed by a document called a "Plan Document." The RSA-LDT "Plan Document" controls the coverage decisions made by the Board of Trustees and sets forth the scope of coverage. The Plan provides coverage for criminal and civil cases as well as administrative proceedings relating to employment. It also provides legal coverage for cases seeking "affirmative relief" or lawsuits brought to benefit the entire RSA membership.

 As Legal Operations Manager for RSA-LDT, Plaintiff was responsible for the day to day operations of the RSA-LDT. This involved planning, organizing and directing the work of staff members in the legal representation division, making initial contact with members of RSA-LDT who were under investigation for disciplinary action, and investigating the claims. He also assisted the RSA-LDT Board as it considered, approved, or denied coverage of the cases.

 In 2003, Jim Cunningham was hired as Executive Director as RSA. He became the Trust Administrator of the RSA-LDT in November, 2004 and, as a result, directed Plaintiff's day to day activities as an employee. Plaintiff's last performance evaluation was conducted by Cunningham on February 15, 2005, at which time he was evaluated in ten categories. He received the rating "meets job requirements," in eight categories, "exceeds job requirements" in one category, and "needs improvement" in one category. Thus, the overall job performance by Plaintiff was satisfactory and would not justify negative action based on Plaintiff's

**FINDING OF FACTS AND CONCLUSIONS OF LAW** ~ 3

job performance.

In 2002, the RSA-LDT provided coverage for Duane Winchell, then a deputy sheriff, in a domestic relations proceeding in which a no-contact order was sought. The entry of the no-contact order would have made it unlawful for Winchell to carry a weapon. RSA-LDT provided coverage because the loss of the right to carry a weapon would affect Winchell's ability to continue his employment as a deputy sheriff. Previously, the RSA-LDT had provided coverage for Winchell in a labor relations dispute in which he was a party that alleged violations of wage laws against the Riverside Sheriff's department.

The facts underlying the domestic relationships dispute gave rise to criminal proceedings against Winchell. The criminal proceedings generally alleged that Winchell had committed criminal acts against his girlfriend by dumping gravel on her driveway, cutting her trees, and stealing her money. The RSA-LDT covered the legal expenses of Winchell in the criminal cases as well as the legal expenses of a later filed civil case against a credit union that released his financial records without his consent or other legal process. The decision to cover the Winchell criminal and later civil cases did not comport with the trust document because Winchell's conduct that led to the criminal prosecution did not occur in the course and scope of employment. A reasonable person reviewing the decision to cover the Winchell legal expenses would conclude that coverage of the cases was not authorized by the trust document and was an improper use of trust funds.

The RSA-LDT Board contended that it had discretion under the trust document to grant coverage for actions that were not in the scope and course of employment and the payment of Winchell' legal expenses was granted by the LDT Chairman under this provision. The coverage of the Winchell legal expenses by RSA-LDT was not the subject of discussion at RSA-LDT Board meetings from 2002-2005 because the decision to grant coverage was not questioned after it had been made. RSA-LDT also paid legal fees to expunge Winchell's criminal record.

**FINDING OF FACTS AND CONCLUSIONS OF LAW** ~ 4

However, even a liberal reading of the trust document would not justify coverage of the Winchell criminal prosecution.

In February, 2005, various Riverside County Sheriffs' offices received a fax claiming, among other things, that the payment of the Winchell legal expenses was unlawful. The fax alleged specific law violations by Pat McNamara, and Jim Cunningham. The leadership of RSA undertook an investigation into the authorship of the fax. McNamara believed that it was management that had sent the fax.

In June, 2005, Plaintiff was disciplined by Cunningham for failing to follow policy in responding to an officer-involved shooting incident that happened during a night in which Plaintiff was responsible for responding on behalf of the trust. RSA-LDT had a heightened interest in responding to a shooting incident and having an attorney respond and consult with the officer involved. The heightened interest arose from the significant exposure of the officer and the trust assets that could arise from a claim of excessive or unlawful use of force against the officer. After Plaintiff received the discipline, he returned to his office and threw a file folder into the trash can. Tanya Conrad, an administrative secretary, witnessed Plaintiff tossing the file in trash can. She reported his conduct to Cunningham several months later in August, 2005. The discipline of Plaintiff for failing to follow policy in the officer involved shooting was not motivated for an improper reason. The discipline was proportional and did not justify further discipline.

Between July 14 and 18, 2005, another fax was received at various Riverside County Sheriffs' offices making essentially the same allegations of illegal conduct by the McNamara, Cunningham, and the LDT for continuing to pay the Winchell legal expenses referenced in the February fax. The leadership of RSA and RSA-LDT investigated the origin of the fax. As a result of the investigation, Jim Cunningham and Pat McNamara, learned that Plaintiff had met with Officer O'Hara of the internal investigations unit of the Sheriff's department about the

**FINDING OF FACTS AND CONCLUSIONS OF LAW ~ 5**

allegations in the faxes that accused Cunningham and McNamara of law violations. Plaintiff had previously met with Officer O'Hara to discuss and disclose alleged law violations by Cunningham and McNamara.

On August 30 or 31, 2005 Cunningham started an investigation into allegations of misconduct by Plaintiff that occurred in June. The complaints alleged that Plaintiff created a hostile work environment for Tanya Conrad and specifically referenced the file throwing incident from June, 2005. Cunningham found that Plaintiff had committed the conduct alleged in the complaints by Conrad and determined to discharge Plaintiff from employment. The investigation and findings of misconduct by Cunningham for this alleged misconduct were motivated by a desire to terminate Plaintiff for his reporting of law violations to responsible authorities, and the investigation and findings were a pretext to cover the retaliatory motivation for the dismissal.

Plaintiff and Cunningham met on September 7, 2005 at a restaurant, while Plaintiff was on administrative leave as a result of Conrad's complaints. At this meeting, Plaintiff revealed himself that he had contacted outside law enforcement about the Winchell coverage issues. On September 13, 2005, Cunningham terminated Plaintiff. The termination was in retaliation for Plaintiff's reporting of suspected law violations to internal and outside authorities.

**2. Conclusions of Law**

The findings of fact establish a claim of retaliation under Section 510 of ERISA by a preponderance of the evidence.

**REMAINING ISSUES**

Based on the Court's findings, it is necessary for the Court to determine the appropriate amount of damages. Additionally, in his trial brief, Plaintiff asks for injunctive relief and attorneys' fees. These issues require further briefing.

///

///

**FINDING OF FACTS AND CONCLUSIONS OF LAW ~ 6**

Accordingly, **IT IS HEREBY ORDERED:**

1. On or before May 13, 2013, Plaintiff is directed to file briefing on the remaining issues to be decided by the Court (damages, injunctive relief, and attorneys' fees). No additional evidence except on Attorneys fees will be received by the Court.

2. On or before May 24, 2013, Defendant is directed to file responsive briefing on the remaining issues to be decided by the Court.

3. After receipt of the briefs and any other motions, the Court will set a hearing, if necessary, to hear further argument.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this 1st day of May, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

C:\Temp\notesC7A056\ffandcl.wpd

**FINDING OF FACTS AND CONCLUSIONS OF LAW ~ 7**